**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

COURTNEY THOMAS and
JEFFREY NICHOLS,

        Plaintiffs,

v.                                                                 Case No. _____

CITY OF CHICAGO AND ITS POLICE                Hon. _____
DEPARTMENT, OFFICERS JASON LANDUM                     **COMPLAINT**
(#17355), OFFICER JOHN KENNEDY (#12134),         **AND JURY TRIAL DEMAND**
DET. C. THOMAS (#20199), DET. MICHAEL
BURKE (#947), DET. JOHN DOUGHERTY
(#20432), LT. JOHN MCMURRAY (#298),
SGT. MARK GIBSON (#2399),
SGT. MICHAEL PARKER(#1295),
DET. PATRICK MADDEN (#20303),
OFFICER LARRY DOTSON (#18360),
OFFICER WILLIAM MOORE (#9849),
DET. NELLIGAN (#21287),
OFFICER RICHARD BOLTON (#3289),
OFFICER KORY PIERCE (#12045),
SGT. B. FERGUSON (#20286),
OFFICER S. HERRERA (#19968),
OFFICER RUSIMAK (#18793),
DANA ALEXANDER,
IPRA INVESTIGATOR JAMES LUKAS,
IPRA INVESTIGATOR KRISTI LYONS,
IPRA INVESTIGATOR GOODWIN,
IPRA INVESTIGATOR MICHAEL DUFFY

        Defendants.

**COMPLAINT**

      NOW COMES the Plaintiffs, COURTNEY THOMAS and JEFFREY NICHOLS, by and

through their attorneys, THE SHILLER PREYAR LAW OFFICES, complaining of the

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 2 of 20 PageID #:2

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*            Case No. _____
**Complaint and Jury Demand**            Page 2

Defendants, the Defendant, City of Chicago, Illinois and above-named Chicago police officers, and state as follows:

## INTRODUCTION

1. These civil rights and personal injury actions are brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiffs' rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1988 and 28 U.S.C. §§ 1331, 1343 and 1367 to redress the deprivation and color of law of Plaintiff Thomas' and Plaintiff Nichols' rights as secured by the U.S. Constitution within this District (28 U.S.C. § 1391).

## PARTIES

3. Plaintiff Courtney Thomas is a United States citizen and currently lives in Michigan.

4. Plaintiff Jeffrey Nichols is a United States citizen and currently lives in Michigan.

5. Defendant Officers OFFICERS JASON LANDUM (#17355), OFFICER JOHN KENNEDY (#12134), DET. C. THOMAS (#20199), DET. MICHAEL BURKE (#947), DET. JOHN DOUGHERTY (#20432), LT. JOHN MCMURRAY (#298), SGT. MARK GIBSON (#2399), SGT. MICHAEL PARKER(#1295), DET. PATRICK MADDEN (#20303), OFFICER LARRY DOTSON (#18360), OFFICER WILLIAM MOORE (#9849), DET. NELLIGAN (#21287), OFFICER RICHARD BOLTON (#3289), OFFICER KORY PIERCE (#12045), SGT. B. FERGUSON (#20286), OFFICER S. HERRERA (#19968), OFFICER RUSIMAK (#18793),

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 3 of 20 PageID #:3

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*             Case No. _____
**Complaint and Jury Demand**                                                                                                       Page 3

AND DANA ALEXANDER are former or current employees of the City of Chicago and its police department.

6. Defendant IPRA Investigators LUKAS, LYONS, GOODWIN, and DUFFY, are present or former employees of the City of Chicago.

7. At all relevant times, Defendant Officers and Defendant Investigators acted under color of law as duly appointed Police Officers of Defendant City and within the scope of their employment. Defendant City of Chicago is a municipal corporation and public entity organized under the laws of the State of Illinois and it and its police department are responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby and it was or is the employer of the Defendant Officers.

## FACTUAL BACKGROUND

8. On or about January 1, 2010, Plaintiff Jeffrey Nichols was a licensed driver in Michigan and owned an automobile and drove it to Chicago, Illinois to drop off a relative and her younger child along with passenger and Plaintiff Courtney Thomas.

9. Nichols dropped off the passenger and her child and intended to get lunch before shopping for some equipment and looking at used cars.

10. Jeffrey Nichols is from Chicago and had previously purchased one or more cars in Chicago.

11. Previously, Jeffrey Nichols had been harassed by police in a different jurisdiction, resulting in a civil rights claim settled in his favor.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 4 of 20 PageID #:4

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*             Case No. _____
**Complaint and Jury Demand**             **Page 4**

12. Previously, Courtney Thomas had had similar negative or problematic interactions with police officers in different jurisdictions, from which he had developed diagnosed stress disorders resulting in the need for psychological counseling.

13. Previously, Courtney Thomas had also been in Chicago years earlier in which he had been robbed/shot.

14. On or about January 1st around 11:30 a.m. or so Nichols was driving on a Chicago street when they drove past a marked Chicago police car but with what appeared to be plain clothes Officers outside of the car.

15. Nichols and Thomas are both African American.

16. Nichols had to slow his car down and passed the Officers and the car.

17. Nichols then made several turns and was driving on East 75th Street near Prairie Avenue/State Street when he noticed a Chicago Police car behind him.

18. Nichols thought that the Police car was intending to pass by him because he believed he had been driving legally, properly, and safely the entire time.

19. Nichols then observed that it appeared as if the Police wanted him to pull over, so he did so timely, reasonably, and appropriately as can been seen on a surveillance videotape from a store across the street. *Exhibit 1 (surveillance video)*.

20. Defendant Landrum was in the passenger seat of the Police car while Defendant Officer Kennedy was driving.

21. Defendant Landrum went to the passenger side of the Nichols car, opened the door, and requested/removed Plaintiff Thomas from the passenger side of the car.

22. Defendant Kennedy went to the driver's side of the Nichols car, opened the door, and requested/removed Plaintiff Nichols from the car.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 5 of 20 PageID #:5

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*            Case No. _____
**Complaint and Jury Demand**            **Page 5**

23. Prior to this time, neither Defendant Officer stated why the Plaintiffs had been pulled over, why they were being asked to get out of the car, or stated that they were under arrest for any reason.

24. Officer Kennedy began to put his hands on Courtney Thomas.

25. Officer Landrum then began to yell over towards Courtney Thomas "what is your problem" and other confrontational words.

26. Officer Landrum then quickly went from behind the Nichols vehicle and grabbed and hit Thomas, including putting him into a headlock-type restraint.

27. Officer Landrum continued to attack and grabbed Thomas, including putting him to the ground and from which Thomas began to bleed.

28. Officer Landrum yelled to Officer Kennedy that Thomas was going for Landrum's service weapon, which was holstered and secured and that Kennedy should "shoot" Thomas.

29. Officer Landrum and Officer Kennedy have given conflicting versions of the incident at issue.

30. Officers Landrum and Kennedy have given conflicting versions of what was said and by whom regarding the incident at issue.

31. Officer Landrum's weapon was not unsnapped or upholstered or at any time held by Plaintiff Thomas, who was being forcibly restrained by Officer Landrum.

32. Plaintiff Nichols was observing the scene unfold, including hearing Officer Landrum tell his partner "to shoot the motherfucker."

33. Plaintiff Nichols yelled out words to the effect that the officer can't or shouldn't shoot Thomas.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 6 of 20 PageID #:6

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*                Case No. _____
**Complaint and Jury Demand**                                                                                                              Page 6

34. Officer Landrum and Officer Kennedy brought Thomas over against a storefront where there was a metal security gate.

35. Officer Kennedy had secured Thomas' left arm with handcuffs and had handcuffed his left arm to the top portion of the metal security gate.

36. Thomas was secured and at no time was a threat to the life or safety of any officer, including since he had been handcuffed to the metal gate and was standing there handcuffed to the metal gate.

37. Officer Landrum then stated to Officer Kennedy, with Thomas handcuffed to the metal store security gate, words to the effect that "well if you won't shoot him I will."

38. Officer Landrum took a step or two back from securing Plaintiff Thomas with Officer Kennedy, pulled his service weapon, a 9 millimeter handgun, and shot Plaintiff Thomas in the stomach area.

39. Officer Kennedy was securing Thomas with Landrum and when Landrum said he would shoot Thomas, Kennedy had a shocked appearance on his face and had to jump out of the way so as not to be struck when Landrum shot Plaintiff Thomas.

40. Officers Landrum and Kennedy forced the Plaintiffs out of the car, subdued, handcuffed, and arrested them.

41. Without cause or provocation, and in violation of the 4th and 14th Amendments to the Constitution of the United States, Landrum unconstitutionally, and with excessive force, shot Plaintiff Thomas in the abdomen when he was handcuffed to a metal store grate.

42. Plaintiff Thomas suffered grievous, serious and permanent wounds and injuries from being shot with a 9 millimeter bullet into his stomach area, requiring multiple surgeries and loss of parts of his stomach and intestines.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 7 of 20 PageID #:7

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*          Case No. _____
**Complaint and Jury Demand**          **Page 7**

43. Multiple independent witnesses at the scene heard Officer Landrum tell Officer Kennedy to shoot Thomas but that Kennedy never even drew his weapon.

44. Multiple independent witnesses at the scene saw the unfolding events and never saw Thomas try to reach for much less unholster Officer Landrum's service weapon.

45. Multiple independent witnesses at the scene saw the unfolding events and never saw Thomas reach for or have any weapon himself.

46. Multiple independent witnesses at the scene saw the unfolding events and saw that Thomas was handcuffed to the gate and presenting no threat to anyone at that time.

47. Multiple independent witnesses at the scene saw the unfolding events and were outraged that a defenseless and handcuffed person was shot in the stomach for no reason at all such that they immediately began voicing outrage and asking the officers questions why he/they shot Thomas.

48. At least one witness called 9-1-1 asking for a police supervisor because she was so outraged at the shooting and she began recording the scene she was so immediately excited and outraged at what was unfolding.

49. Officer Kennedy was aware of Officer Landrum's misconduct, including demanding that Kennedy "shoot the motherfucker," which Kennedy disregarded and did not even unholster his weapon but rather handcuffed Thomas.

50. Officer Kennedy had reasonable opportunities to intervene and prevent Officer Landrum's known and intended actions of seeing Thomas shot but failed to do so.

51. Meanwhile, Plaintiff Nichols had been taken from the back of his vehicle to the curb in front of his car.

52. Plaintiff Nichols was handcuffed.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 8 of 20 PageID #:8

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*     Case No. _____
**Complaint and Jury Demand**     **Page 8**

53. The temperature was cold and Nichols was not placed under arrest, was refused his request to get his coat in his car, and was seated handcuffed during which Officer Landrum would on at least two occasions forcibly "pinch" Nichols' shoulder/neck area painfully and for a sustained period.

54. Nichols was then told that he was "just a witness."

55. Nichols was then placed in the back of a "paddy wagon" of the Chicago Police Department, again not placed formally under arrest but he was handcuffed, not allowed to leave, without his coat, and forced to stay in the back of the police vehicle for a sustained period of time.

56. Nichols remained handcuffed in the back of the police paddy wagon and then driven to a police headquarters area some distance away.

57. Nichols was handcuffed to a wall inside the Chicago police building.

58. Nichols previously had suffered a back injury and told the officers that the handcuffing, especially to a wall, was hurting him, to which he was told by police: "Good."

59. Nichols remained handcuffed for upwards of seven hours, including to a wall.

60. Nichols was handcuffed and not allowed to use the restroom, having to then urinate into a wastebasket.

61. Nichols was questioned and interrogated, including attempts to get him to incriminate himself and /or Thomas.

62. Nichols was seized and restrained and imprisoned, against his will, and without probable cause or any other justifiable legal reason, for approximately ten or more hours.

63. Nichols was then "released" well after midnight and asked for a cab to be called and directions as to where he had been held.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 9 of 20 PageID #:9

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*             Case No. _____
**Complaint and Jury Demand**             **Page 9**

64. Defendant Officers became aggressive with him, trying to intimidate and challenge him with threatening language and finally said to other officers present that Nichols was a cop killer or was associated with a cop killer and that nobody should help him at all.

65. It was below freezing, and Nichols' coat and car were taken from him by the Defendants, and he was finally able to leave the police headquarters in the early morning hours.

66. Because it was then in the early morning hours, Nichols had to find a 7-11 to stay in before the train station opened in a few hours but the train was booked because of the holiday, requiring Nichols to find a hotel since he had no transportation and no coat to wear.

67. In addition, Nichols' car was impounded and has been impounded from January 1, 2010 until current date along with other personal possessions inside of the car.

68. In an attempt to cover-up the unjustified shooting, and to intimidate Nichols, Officers Landrum and Kennedy concocted false facts and charges against Thomas and arranged to have Nichols seized without probable cause and intimidated and conspired with other police officers currently unnamed or not known in this complaint to violate Plaintiffs' civil rights.

69. Plaintiff Thomas was charged with multiple criminal charges in the Cook County Criminal Courts.

70. Plaintiff Thomas was hospitalized under arrest and then following surgeries and discharge was incarcerated from the date Landrum unjustifiably shot him until approximately September of 2011, when he entered a no contest plea to unlawful possession of a firearm and resisting arrest so that he could be released from the Cook County jail.

67. Plaintiff Thomas had $3,462.00 in his possession with him to use if a decent used car could be found to buy in Chicago, which money was illegally/unconstitutionally seized and

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 10 of 20 PageID #:10

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*      Case No. _____
**Complaint and Jury Demand**      **Page 10**

remains unreturned and in the possession of the Defendants/City of Chicago and/or its Police Department or agencies.

68. Defendants attempted to intimidate and/or coerce the independent witnesses from reporting what they observed and reported—namely, that the Officers were the aggressors and created a confrontation, which then was under control but Landrum nevertheless then kept saying if Kennedy would not shoot Thomas he would, taking a step or two back, unholstering his gun, aiming and then shooting Thomas in the stomach.

69. As a direct and proximate result of the excessive force and wrongful conduct, Thomas suffered personal injuries, pain, agony and permanent damages, including medical treatments and bills in the past and future.

70. As a direct and proximate result of the Defendants' conduct, Nichols suffered personal injuries, harms, losses, and violations of his civil rights.

71. One or more Defendants created false police reports and gave false and misleading accounts of witness interviews and tried to coerce/intimidate witnesses to cover up the misconduct of Officers Landrum and Kennedy.

72. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendants Bolton and Pierce wrongfully seized the cash from Thomas.

73. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Madden took statements and then falsified portions thereof from witness Ozell Champagne.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 11 of 20 PageID #:11

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*     Case No. _____
**Complaint and Jury Demand**     Page 11

74. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Madden took statements and then falsified portions thereof from witness Antonio Champagne.

75. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Madden took statements and then falsified portions thereof from witness Robin Gibbs.

76. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Dougherty created a detectives supplemental report that included falsehoods.

77. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Nelligan took statements and then falsified portions thereof from witness Plaintiff Nichols.

78. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant C. Thomas took statements and then falsified portions thereof from witness Wambaugh.

79. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Moore created a crime scene report that contained falsehoods.

80. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Alexander approved multiple reports with known falsehoods.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 12 of 20 PageID #:12

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*     Case No. _____
**Complaint and Jury Demand**     Page 12

81. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Lyons took statements—and in the process manipulated those statements—from Jacqueline House and Ozell Champagne.

82. Defendant Lyons further went about the investigative process in a manner designed to cover-up the excessive force used against Thomas and the unlawful seizure of Nichols.

83. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Lukas took statements—and in the process manipulated those statements—from Gibbs and Nichols.

84. Defendant Lukas further went about the investigative process in a manner designed to cover-up the excessive force used against Thomas and the unlawful seizure of Nichols.

85. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Goodwin took statements—and in the process manipulated those statements—from Antonio Champagne and Ozell Champagne.

86. Defendant Goodwin further went about the investigative process in a manner designed to cover-up the excessive force used against Thomas and the unlawful seizure of Nichols.

87. As part of both the conspiracy to cover-up the excessive force against Thomas and the attendant conspiracy to falsely seize Nichols, Defendant Duffy went about the investigative process in a manner designed to cover-up the excessive force used against Thomas and the unlawful seizure of Nichols.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 13 of 20 PageID #:13

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*      Case No. _____
**Complaint and Jury Demand**      Page 13

## COUNT I—excessive force against Landrum and Kennedy

### EXCESSIVE FORCE

88. Plaintiffs re-allege and incorporate all previous and subsequent paragraphs as if fully set forth herein.

89. Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured person.

90. At all times relevant, Defendants were acting under color of state law.

91. Defendant Landrum's conduct toward Plaintiff Thomas was objectively unreasonable and constituted excessive force in violation of the Fourth Amendment to the Constitution.

92. Officer Kennedy was aware of Landrum's misconduct and had several opportunities to intervene and prevent it and protect Plaintiff Thomas but failed to do so, subjecting him to liability under law.

93. Defendants' acts were also willful, wanton, malicious, oppressive, and done with conscious disregard and deliberate indifference for Plaintiffs' rights, entitling Plaintiff to punitive damages.

94. The actions of Defendants Landrum and Kennedy, individually and collectively or jointly, constituted unreasonable, unjustifiable, and excessive force against Plaintiffs Courtney Thomas thus violating his and their rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

95. As a direct and proximate result and cause of the Defendants' actions, Plaintiff was injured physically, psychologically, emotionally, and financially, including but not limited to permanent pain, mental suffering, anguish, humiliation, and fear.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 14 of 20 PageID #:14

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*     Case No. _____
**Complaint and Jury Demand**     Page 14

96. The Defendants inflicted physical violence upon Plaintiff that was excessive, unnecessary, unreasonable, and grossly disproportionate to the need for action and for shooting a handcuffed man under the circumstances.

97. The actions of Defendants were willful, reckless, malicious, and/or done with a reckless indifference to, and callous disregard for, Plaintiffs' rights.

**WHEREFORE**, Plaintiff request actual and compensatory and punitive damages in an amount deemed at the time of trial to be just and fair and along with attorneys' fees and costs under the laws of the United States of America, 42 U.S.C. §§ 1983 and 1988, *et al*. and the Constitution of the United States.

## COUNT II

### UNLAWFUL SEIZURES OF PERSONS AND PROPERTY—AGAINST ALL DEFENDANTS

98. Plaintiffs re-allege and incorporate all previous and subsequent paragraphs as if fully set forth herein.

99. Plaintiff Nichols was and is an innocent witness and victim, having been unconstitutionally seized, handcuffed, detained, physically punished, and his car and possessions seized and remain unretained to current date, all contrary to law and contrary to established procedures and processes, depriving him of the use and monetary value of his car and possessions.

100. Plaintiff Thomas had his money improperly and illegally seized and kept and without appropriate due process, which seizure and deprivation continues to current date.

101. The actions of all of the above-named Defendant Officers, individually and/or collectively and/or jointly, constituted unreasonable, unjustifiable, and unconstitutional searches

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 15 of 20 PageID #:15

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*      Case No. _____
**Complaint and Jury Demand**      Page 15

and seizures, without probable cause, without legal justification, and violations under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

102. Plaintiffs' claims are pursuant to 42 U.S.C. §§ 1983 and 1988 for monetary relief and damages for violations of the Fourth Amendment protection against unreasonable searches and seizures and for violations of their Fourteenth Amendment Right not to be deprived of due process of law.

103. All Defendant Officers were aware of each others misconduct as it relates to the unlawful seizure of Nichols, and the unlawful seizures of property from Nichols and Thomas, and had opportunities to intervene, but failed to do so.

104. The actions of Defendants were willful, reckless, malicious, and/or done with a reckless indifference to, and callous disregard for, Plaintiffs' rights.

**WHEREFORE**, Plaintiff request actual and compensatory and punitive damages in an amount deemed at the time of trial to be just and fair and along with attorneys' fees and costs under the laws of the United States of America, 42 U.S.C. §§ 1983 and 1988, *et al*. and the Constitution of the United States.

## COUNT III

### UNCONSTITUTIONAL TAKINGS/VIOLATIONS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS/CONSPIRACY

105. Plaintiffs re-allege and incorporate all previous and subsequent paragraphs as if fully set forth herein.

106. Jeffrey Nichols owned the 1999 Silver Chrysler Concord that was pulled over by the above-named Officers Landrum and Kennedy and which was then subsequently seized, towed, impounded, and kept now since January 1, 2010, depriving Plaintiff of it use, economic value, and at a prohibitive and arbitrary cost.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 16 of 20 PageID #:16

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*     Case No. _____
**Complaint and Jury Demand**     Page 16

107. Jeffrey Nichols also had personal possessions inside of the car, which were also arbitrarily and capriciously seized and kept and have been since January 1, 2010.

108. Courtney Thomas had $3,462.00 on his person and/or in his possession and control and that Defendants seized and have kept since January 1, 2010.

109. Defendants, individually, collectively, and/or jointly, have unconstitutionally deprived plaintiffs of the use and value of their property, including unconstitutional takings and violations of procedural and/or substantive due process by the manner in which the car and personal property and clothing were seized and have been kept without appropriate due process, in violation of the rights of the Plaintiffs.

110. Defendants, individually, collectively, and/or jointly, have conspired to deprive the Plaintiffs of their Constitutional rights outlined above along with deprivations and taking of their personal property outlined above, entitling them for an award of damages for their harms and losses.

111. Defendant officers impliedly and/or expressly conspired and agreed to violate Plaintiffs' Constitutional rights and to cover up the wrongdoing of Officers Landrum and Kennedy, acting in furtherance of this conspiracy described in this Complaint.

112. As a direct and proximate result of this conspiracy, Plaintiffs suffered the harms and losses described in this Complaint.

**WHEREFORE**, Plaintiffs request actual and compensatory and punitive damages in an amount deemed at the time of trial to be just and fair, along with attorneys' fees and costs under the laws of the United States of America, 42 U.S.C. §§ 1983 and 1988, *et al.* and the Constitution of the United States.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 17 of 20 PageID #:17

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*      Case No. _____
**Complaint and Jury Demand**      Page 17

# COUNT IV

## CONSPIRACY TO COVER UP EXCESSIVE FORCE, TO FALSELY SEIZE NICHOLS, AND TO FALSELY SEIZE PROPERTY

113. Plaintiffs re-allege and incorporate all previous and subsequent paragraphs as if fully set-forth herein.

114. In addition to the conspiracy alleged in the previous count, all defendants conspired to cover-up the excessive force used against Plaintiff, and in so doing devalued plaintiff's excessive force claim by creating false reports, erroneously creating inconsistencies in the witness statements of civilian witnesses, failing to secure all potential evidence, testifying falsely in court, and in various other ways.

115. The purpose of this conspiracy was to deprive Plaintiffs of the full benefit of the civil legal system in prosecuting their Fourth and 14th amendment claims.

116. This conspiracy did in fact impact that ability.

117. As a direct and proximate result of this conspiracy, Plaintiffs suffered the harms and losses described in this complaint.

118. In furtherance of this larger conspiracy, all defendants engaged in smaller conspiracies to deprive both plaintiffs of their constitutional rights, including but not limited to: 1) the unlawful seizing of Nichols; 2) the wrongful seizure of Nichols' property; 3) the wrongful seizure of Thomas' property; and 4) the falsifying of police reports and statements.

> **WHEREFORE**, Plaintiffs request actual and compensatory and punitive damages in an amount deemed at the time of trial to be just and fair, along with attorneys' fees and costs under the laws of the United States of America, 42 U.S.C. §§ 1983 and 1988, *et al.* and the Constitution of the United States.

**Count IV**

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 18 of 20 PageID #:18

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*             Case No. _____
**Complaint and Jury Demand**             Page 18

## MONELL POLICY CLAIMS

119. Plaintiffs re-allege and incorporate all previous and subsequent paragraphs as if fully set forth herein.

120. Defendant City and/or its Defendant officers had policies, practices, customs and procedures by which (1) witnesses can be seized and detained and handcuffed for hours without justification and for punitive purposes; (2) "evidence" not related to nor relevant to any criminal charge be seized and detained and not returned arbitrarily and capriciously and without due process; and, (3) its police officers and allowed to violate the Constitutional rights of citizens without fear of any punishment for misconduct and to cover up misconduct rather than independently investigate it. In particular, there is an excepted practice by which IPRA actually acts as a shield for police-misconduct while operating under the guise of investigating police misconduct. In furthering this institutional covering up of police shootings, IPRA routinely fails to interview officers alleged of misconduct, routinely manipulates witness statements, and routinely fails to investigate obvious objective areas of science.

121. The Defendant City and/or its Defendant officers alternatively failed to establish and/or execute appropriate procedures for preventing the above factual malfunctioning and/or misuse of the judicial process, including but not limited to an entire array of police officers and supervising officers calling a person a "witness" yet all of them proceeding to de facto arrest him, detain him, handcuff him, mistreat him; and including but not limited to seizing and retaining personal property of both accused and innocent and uncharged persons without appropriate due process and without established procedures to return such personal property such that personal property can arbitrarily and capriciously be detained indefinitely.

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 19 of 20 PageID #:19

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*     Case No. _____
**Complaint and Jury Demand**     Page 19

122. Defendant City of Chicago violated Plaintiffs' rights since it created the opportunities for, and tacitly or expressly approved of, the Defendants' committing the foregoing Constitutional violations.

123. The above-described misconduct has become so common and widespread as to constitute a *de facto* policy and custom in the Chicago Police Department.

124. The widespread practice described in the preceding paragraphs was allowed to flourish because Defendant City of Chicago has declined to implement sufficient training and/or any legitimate and/or effective mechanisms for oversight and/or punishment of police officer misconduct and knowingly allow the cover up of misconduct.

125. These policies, procedures, practices and/or customs were and are the moving force behind the constitutional violations alleged in this Complaint.

126. As a direct and proximate cause, the Plaintiffs suffered the harms and losses alleged elsewhere in this Complaint.

**WHEREFORE**, Plaintiffs request actual and compensatory and punitive damages in an amount deemed just and fair along with attorneys' fees and costs under the laws of the United States of America, including 42 U.S.C. §§ 1983, 1988 *et al*.

                 Respectfully submitted,

/s/ William J. Stevens          /s/ Brendan Shiller
William J. Stevens             Brendan Shiller
P.O. Box 22                   SHILLER PREYAR LAW OFFICES
Lakeside, MI 49116           110 West Cermak, Suite B401
269-469-1469                Chicago, IL 60608
ARDC: 2731215            312-226-4590
lawyerbill@qtm.net           ARDC: 6279789
                                 Brendan@shillerlaw.com

Case: 1:11-cv-09275 Document #: 1 Filed: 12/29/11 Page 20 of 20 PageID #:20

*Courtney Thomas and Jeffrey Nichols v. Officer Jason Landum, et al.*　　　　　　Case No. _____
**Complaint and Jury Demand**　　　　　　　　　　　　　　　　　　　　　　　　　　Page 20

_____

## **JURY DEMAND**

Plaintiffs demand a trial by jury in the above-captioned matter.

　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,


/s/ William J. Stevens　　　　　　　　　　　　/s/ Brendan Shiller
William J. Stevens　　　　　　　　　　　　　　Brendan Shiller
P.O. Box 22　　　　　　　　　　　　　　　　　SHILLER PREYAR LAW OFFICES
Lakeside, MI 49116　　　　　　　　　　　　　110 West Cermak, Suite B401
269-469-1469　　　　　　　　　　　　　　　　Chicago, IL 60608
ARDC: 2731215　　　　　　　　　　　　　　　312-226-4590
lawyerbill@qtm.net　　　　　　　　　　　　　ARDC: 6279789
　　　　　　　　　　　　　　　　　　　　　　　Brendan@shillerlaw.com